UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ZAKIYA HAMILTON on behalf of Z.T.W.,

            Plaintiff,

     v.                                     Case No. 20-CV-20

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

            Defendant.

## DECISION AND ORDER

**1. Introduction**

     Zakiya Hamilton initially applied for supplemental security income on November 2, 2015, on behalf of Z.T.W., Hamilton's daughter, who was born in September of 2013. The claim proceeded to a hearing before an administrative law judge (ALJ), at which Hamilton appeared without a representative. (Tr. 56-80.) The ALJ denied the application (Tr. 11-33), and the Appeals Council denied a request for review (Tr. 1-5), leading to Hamilton filing this action.

     All parties have consented to this court's full jurisdiction, and the matter is ready for resolution. (ECF Nos. 5, 7.)

## 2. ALJ's Decision

The Social Security Administration's regulations outline a three-step process to determine whether a minor claimant is disabled. At step one the ALJ must determine if the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If a child is engaged in substantial gainful activity, she is not disabled. 20 C.F.R. § 416.924(b). Substantial gainful activity is defined as "doing significant physical or mental activities." 20 C.F.R. § 416.972(a). Gainful work activity is defined as "work activity you do for pay or profit." 20 C.F.R. § 416.972(b). Activities such as taking care of oneself or attending school are generally not considered to be substantial gainful activity. 20 C.F.R. § 416.972(c). The ALJ found that Z.T.W. has not engaged in substantial gainful activity since the date of the application, November 2, 2015. (Tr. 17)

At step two the ALJ must list all medically determinable impairments that are severe. 20 C.F.R. § 416.924(c). For a minor, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality, or a combination of slight abnormalities, that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. 20 C.F.R. § 416.924(c). The ALJ found that Z.T.W. has the following severe impairments: left ear hearing loss and asthma. (Tr. 17.) She was born without a cochlear nerve on her left side, meaning that she cannot hear on that side.

At step three the ALJ must determine whether the claimant's condition either medically or functionally "meets" or "equals" the listed impairments. 20 C.F.R. § 416.924(d). In analyzing whether an impairment or combination of impairments meets the listings, the ALJ must assess the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The ALJ must compare how appropriately, effectively, and independently the claimant performs activities as compared to the performance of other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). To functionally equal the listings, the claimant's impairment(s) must result in "marked" limitations in at least two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). If a child's impairments do not meet, medically equal, or functionally equal a listed impairment, she is not disabled. 20 C.F.R. § 416.926a(d).

"Marked" limitations are defined as impairments that interfere seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). They are evidenced when the observed functioning is equivalent to the functioning expected when standardized test scores fall between two and three standard deviations below the mean. 20 C.F.R. §416.926a(e)(2)(i). "Extreme" limitations are limitations that

are "more than marked" or the equivalent of functioning that is greater than three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3).

The ALJ found that Z.T.W. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 18.) He specifically considered listing 102.10. (Tr. 18.) Nor does she "have an impairment or combination of impairments that functionally equals the severity of the listings." (Tr. 18.) In terms of the six functional equivalence domains, the ALJ found that Z.T.W. "has no limitation in acquiring and using information" (Tr. 23); "has no limitation in attending and completing tasks" (Tr. 24); "has less than marked limitation in interacting and relating with others" (Tr. 25); "has no limitation in moving about and manipulating objects" (Tr. 26); "has no limitation in the ability to care for herself" (Tr. 27); and "has less than marked limitation in health and physical well-being" (Tr. 28). Therefore, the ALJ found that Z.T.W. is not disabled.

## 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. **Analysis**

   4.1. **Medical Equivalence to Listing 102.11**

   Listing 102.11 is titled, "Hearing loss treated with cochlear implantation," and provides:

   > A. Consider under a disability until the attainment of age 5 or for 1 year after initial implantation, whichever is later.
   >
   > OR
   >
   > B. Upon the attainment of age 5 or 1 year after initial implantation, whichever is later, a word recognition score of 60 percent or less determined using the HINT or the HINT-C (see 102.00B3b).

   Hamilton argues that Z.T.W.'s "condition is worse than that which is outlined in Listing 102.11 because she does not have a cochlear nerve at all on her left side, thereby preventing her from being able to receive a cochlear implant." (ECF No. 14 at 3.) "If Z.T.W. were lucky enough to have a cochlear nerve, she could benefit from a cochlear

implant, and the Social Security Administration would have been required to find her disabled as equaling 102.11." (ECF No. 14 at 4.)

Hamilton's argument presumes that listing 102.11 applies to persons with single-sided deafness, *i.e.*, that if a child were deaf in only one ear, and that deafness was treated with a cochlear implant, the child would be deemed disabled for a period of time.

Listing 102.11 is arguably ambiguous as to whether it applies to single-sided deafness. However, it must be read alongside the other listings. Applying 102.11 to single-sided deafness would place it at odds with listing 102.10, under which someone deaf in one ear is not disabled provided the "better ear" functions at a certain threshold. Thus, under listing 102.10, a child with unimpaired hearing in one ear is not disabled. Yet, if the court were to agree with Hamilton's argument, every child with single-sided deafness would be disabled under listing 102.11, either by meeting or medically equaling the listing, regardless of how well she could hear out of the other ear or the nature and extent of any resulting impairment.

Further supporting the conclusion that listing 102.11 does not apply to single-sided deafness is the fact that, when the listing was adopted, the FDA had not yet approved the use of cochlear implants to treat single-sided deafness. The listing was initially proposed in 2008, 73 FR 47103, 47113, and adopted in 2010, 75 FR 30693, 30704. It was not until 2019 that the FDA first approved the use of a cochlear implant for single-sided deafness, and even then it was only approved for persons at least five years old. *See*

FDA Approval Order P000025/S104 (July 19, 2019), available at https://www.accessdata.fda.gov/cdrh_docs/pdf/P000025S104A.pdf; *see also* MED-EL Cochlear Implant System - P000025/S104 available at https://www.fda.gov/medical-devices/recently-approved-devices/med-el-cochlear-implant-system-p000025s104 (last visited March 2, 2021); John J. Galvin, III *et. al. Benefits of Cochlear Implantation for Single-Sided Deafness: Data From the House Clinic-University of Southern California-University of California, Los Angeles Clinical Trial*, 40 Ear and Hearing 766 (2019) available at https://journals.lww.com/ear-hearing/fulltext/2019/07000/benefits_of_cochlear_ implantation_for_single_sided.2.aspx (noting the absence of general FDA approval of cochlear implants for single-sided deafness). Thus, when the Administration adopted listing 102.11, it only could have been referring to the use of a cochlear implant in persons suffering deafness in both ears.

The fact that the FDA did not approve cochlear implants for single-sided deafness until 2019 also undermines Hamilton's argument as it applies specifically to Z.T.W. It was not merely the absence of a cochlear nerve that prevented Z.T.W. from obtaining a cochlear implant before she was five years old; the use of cochlear implants for one-sided deafness had not yet been approved by the FDA. By the time it was approved, Z.T.W. was already five years old and, therefore, would have been disabled only if she had "a word recognition score of 60 percent or less determined using the HINT or the HINT-C." There is no evidence that she met or medically equaled this criterion.

In sum, listing 102.10 was the appropriate listing under which to assess Z.T.W.'s single-sided deafness. The ALJ explicitly discussed this listing (Tr. 18), and Hamilton does not allege the ALJ erred in that discussion.

**4.2. Functional Equivalence**

In a January 7, 2016 visit with an audiologist, under "impressions" there is written:

> Children with unilateral hearing loss are at greater risk for experiencing speech and language development delays. Some hearing difficulties associated with unilateral hearing loss are impaired "localization" ability (the ability to locate the source of a sound), difficulty understanding distant or soft speech, difficulty hearing in noisy situations, and difficulty hearing when a speaker is on the side of their poor hearing ear. It is also important to recognize that a unilateral hearing loss can be deceptive. These children generally hear well in quiet situations when in close proximity to the speaker. However, in less than ideal situations, they experience greater difficulties than their normal hearing peers.

(Tr. 307.)

Hamilton argues, "This synopsis should have formed the basis for the ALJ inquiry into whether Z.T.W.'s conditions functionally equaled the severity of the listings." (ECF No. 14 at 5.) According to Hamilton, because she was unrepresented, the ALJ should have solicited additional evidence as to how these limitations may have affected Z.T.W. (ECF No. 14 at 5.)

"An SSI applicant's right to be represented by counsel at a disability hearing is statutory, *see* 42 U.S.C. § 406; *Nelson v. Apfel*, 131 F.3d 1228, 1231 n.1 (7th Cir. 997); *Binion v. Shalala*, 13 F.3d 243, 244 (7th Cir. 1994); *Thompson v. Sullivan*, 933 F.2d 581, 584-85 (7th Cir. 1991); 20 C.F.R. § 404.1700, but the right may be waived, *see Thompson*, 933 F.2d at

584." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Davis v. Colvin*, No. 14-C-104, 2014 U.S. Dist. LEXIS 140171, at *14 (E.D. Wis. Oct. 2, 2014) (discussing this standard in the context of a child disability claim). "To ensure valid waivers, ALJs must explain to pro se claimants '(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'" *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Binion*, 13 F.3d at 245; *Thompson*, 933 F.2d at 584). "The ALJ's failure to obtain a valid waiver of counsel heightens his duty to develop the record." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

The ALJ explicitly discussed Hamilton's right to counsel at the beginning of the hearing. (Tr. 58.) He explained the manner in which an attorney may be able to help. (Tr. 58-59.) He explained the possibility of obtaining counsel on a free or contingency fee basis. (Tr. 59.) And he explained the cap on attorney fees. (Tr. 59.) In short, the ALJ did exactly what he was expected to do. The ALJ even offered to adjourn the hearing to give Hamilton time to find an attorney. (Tr. 59-60.) Hamilton confirmed that she understood what the ALJ had said, said she had no questions, and she wished to proceed without a lawyer. (Tr. 59-60.) Because Hamilton appropriately waived her right to counsel, the ALJ was not under a heightened duty to develop the record.

As to the merits of her argument that the ALJ erred in his consideration of whether Z.T.W. functionally equaled a listing, Hamilton offers only speculation. For example, with respect to the "caring for yourself" domain, she speculates that Z.T.W's difficulty in localizing sound "could present a danger to her safety if she could not hear where a sound was coming from in an emergency, such [as] a ball flying at her in the park, or a vehicle such as bike or car approaching her on the sidewalk or in the street." (ECF No. 14 at 6.) Or, with respect to attending and completing tasks, she speculates that Z.T.W. may have difficulty understanding distant or soft speech, which might result in inattention in class. (ECF No. 14 at 7.) But she does not point to any evidence that Z.T.W. was actually limited in these regards.

And, finally, Hamilton notes that Z.T.W.'s hearing limitations would affect her interacting with others. (ECF No. 14 at 7-8.) The ALJ agreed but found any such limitation to be less than marked. Hamilton criticizes the ALJ's decision because it was based on a consultative examination that she thinks might have been incomplete because it might not have assessed whether Z.T.W. had difficulty understanding in certain specific situations. (ECF No. 14 at 8.) Hamilton's speculation that additional evidence might support a finding of disability is not a basis for remand. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Moreover, the court is presented with no reason to believe that any additional evidence might support a finding that Z.T.W. suffered marked limitations in at least two domains of functioning or

an extreme limitation in one domain. Consequently, even if the court could say that the ALJ somehow erred, Hamilton has not shown prejudice from any error. *See Nelms*, 553 F.3d at 1098.

Therefore, the court must affirm the ALJ's decision.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of March, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge